IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JIRAWAN S. FABER, Administrator, | Case No.: 1:19-cv-00849-PAB |
| Plaintiff, | Judge: Pamela A. Barker |
| vs. | |
| PNA TRANSPORT, LLC, et al., | **MOTION FOR DEFAULT JUDGMENT AGAINST ALL DEFENDANTS** |
| Defendants. | |

Plaintiff, Jirawan S. Faber, as Administrator of the Estate of Sutthiphong Sandod, deceased, (the "Estate"), by and through the undersigned counsel, hereby moves this Court for entry of default judgment against Defendants PNA Transport, LLC, Taha Albanna, Jennifer Albanna, Ahmad Albanna, and Derrick Davis pursuant to Fed. R. Civ. P. 55(b)(2).

For all of the reasons that follow, Plaintiff respectively requests that the Court enter default judgment against Defendants PNA Transport, LLC, Taha Albanna, Jennifer Albanna, Ahmad Albanna, and Derrick Davis, jointly and severally, in the amount of $1,154,516.13, plus interest from the date of judgment as provided by law and the costs of this action. In support of this request, Plaintiff relies upon the record in this case and the affidavits of Jirawan Faber ("J. Faber Aff."), Nathan Faber ("N. Faber Aff."), S. Faber,

1

a minor ("S. Faber Aff."), and Michael Schmeltzer ("Schmeltzer Aff."), which are submitted herewith as Exhibits 1, 2, 3, and 4 respectively.

## I. BACKGROUND

This case arises out of a March 13, 2018 collision that resulted in the tragic and untimely death of Sutthiphong "Mikel" Sandod. Just prior to the impact, Mikel was traveling eastbound along Highway 26 East in Poplarville (Pearl River County), Mississippi. The Defendant truck driver (Derrick Davis) negligently made a left turn in front of Mikel (failing to yield to Mikel's right-of-way) and collided with Mikel's vehicle in the eastbound lane, sending Mikel and his vehicle off the northside of the roadway and down an embankment. As a result, Mikel suffered catastrophic personal injuries and died hours later while receiving medical attention. (Ecf no. 1 (Plaintiff's Complaint)); J. Faber Aff., at Exhibits 1-h, 1-i, and 1-j.)

On April 16, 2019, Plaintiff filed this wrongful death/survivorship action (and related claims) against Defendants PNA Transport, LLC, Taha Albanna, Jennifer Albanna, Ahmad Albanna, and Derrick Davis. Plaintiff's theories of liability include negligent operation of a motor-vehicle (Counts I and II); negligent entrustment of the subject semi tractor-trailer (the "Semi") to an unqualified truck driver (Count III); negligent hiring retention, and supervision of the truck driver (Count IV); and vicarious liability for the truck driver's negligence (Count V). (Ecf no. 1.)

Defendants PNA Transport, LLC, Taha Albanna, Jennifer Albanna, and Ahmad Albanna are Ohio residents and the owners/partners/operators of the PNA Transport trucking business ("PNA Trucking"). (Ecf no. 1.) Prior to the crash and going back to at least 2013, Mr. Davis was employed by PNA Trucking and operated trucks on its behalf

2

pursuant to a valid commercial driver's license issued in his own name. (Ecf no. 1; Schmeltzer at Aff. Exhibits 4-i and 4-j.) However, in 2016, Mr. Davis' commercial driver's license ("CDL") was "suspended" for operating a motor vehicle under the influence of drugs and/or alcohol ("OVI"). (Ecf no. 1; Schmeltzer Aff. at Exhibit 4-i.) In August 2017, his CDL was "disqualified" on an indefinite basis for a second OVI conviction. (*Id.*) It appears that on January 17, 2018, Mr. Davis fraudulently obtained and began using a commercial driver's license issued with his photograph but containing Jorge Clinton Bradley's personal information. (Ecf no. 1; Schmeltzer Aff. at Exhibits 4-g, 4-h, 4-i, 4-j.)

PNA Trucking permitted Mr. Davis to continue operating its commercial vehicles with the fraudulent license. In fact, not only did Davis portend to be Bradley at the scene and present Bradley's commercial driving credentials to authorities, but it appears he did so on at least three prior occasions as well. (Schmeltzer Aff. at Exhibits 4-g and 4-j.) Just as in the prior instances, Mr. Davis' fraud was not detected by police on the date of the crash. (Schmeltzer Aff. at Exhibits 1 and 2 attached to Exhibit 4-g.) He has been since been indicted by the State of Ohio for identity fraud and tampering with records. (Schmeltzer Aff. at Exhibit 4-h.)

Defendants have failed to timely responded to Plaintiff's Complaint or otherwise defend in this case. Thus, default was entered by the Clerk pursuant to Rule 55(a) against Defendants PNA Transport, LLC, Taha Albanna, and Jennifer Albanna on August 27, 2019 (ecf no. 35) and likewise against Defendants Ahmad Albanna and Derrick Davis on November 18, 2019 (ecf. no. 41). Plaintiff now files this Motion for Default Judgment against all Defendants and requests that the Court enter judgment against them, jointly

and severalty, in the amount of $1,154,516.13, plus interest from the date of judgment as provided by law, together with the costs of this action.

## II. LAW AND ANALYSIS

### A. Legal standard.

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Entry of default is governed by Fed. R. Civ. P. 55(a), which provides that: "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." "An entry of default and a default judgment are distinct events that require separate treatment." *Ramada Franchise Sys. v. Baroda Enters, LLC*, W.D. Ohio No. 3:03 CV 7665, 220 F.R.D. 303, 2004 U.S. Dist. LEXIS 3577, **2 (Feb. 25, 2004). "'Entry of a default,' as noted in *Systems Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985), 'is a prerequisite to entry of default judgment under Rule 55(b)." *Id.* at **3.

Once default has been entered against a defendant, the defendant is deemed to have admitted all of the factual allegations in the complaint regarding liability, including jurisdictional averments. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (*citing Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

The allegations in the complaint as to liability are taken as true when a defendant is in default, but not as to damages. *Ford Motor Co.*, 441 F. Supp. 2d at 846 (*citing*

4

*Visioneering Constr.*, 661 F.2d at 124); *Nat'l Satellite Sports, Inc. v. Mosley Entm't Inc.*, No. 01 CV-74510-DT, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) (the allegations of the complaint regarding the amount of damages are not controlling) (citations omitted). "[T]he civil rules 'require that the party moving for a default judgment must present some evidence of its damages.'" *IBEW Local Union 82 v. Union Lighting Prot.*, No. 3:11-CV-208, 2012 WL 554573, at *1 (S.D. Ohio Feb. 21, 2012) (*quoting Mill's Pride, L.P. v. W.D. Miller Enterpr.*, No. 2:07-cv 990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010)).

Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 U.S. Dist. LEXIS 47240, at *3-*4 (S.D. Ohio Apr. 3, 2012) (*citing Vesligaj v. Peterson*, 331 F. App'x. 351, 354-55 (6th Cir. 2009)). The Court may rely on affidavits submitted by plaintiff in support of damages without the need for a hearing, particularly where the defendant has failed to appear or otherwise defend and thus would not participate in an evidentiary hearing if it occurred. *Id.* at *4-*5 (citations omitted).

### B. The Court should enter default judgment against Defendants, jointly and severally, in the amount of $1,154,516.13 plus interest and costs.

Because Defendants have not timely responded to Plaintiff's Complaint and the Clerk has entered default against them, they are deemed to have admitted the allegations in the Complaint, and those allegations are sufficient to establish Plaintiff's claims against them. Accordingly, Plaintiff is entitled to default judgment against Defendants as to liability.

Given that Defendants have made no appearance in this case despite having been validly served with the Complaint, the Court should enter judgment against Defendants

based upon the record and the uncontested, sworn affidavits submitted along with this Motion.[1]

### 1. The Mississippi Wrongful Death Statute permits Plaintiff to recover Mikel's funeral and medical expenses, Mikel's conscious pain and suffering, the present net cash value of Mikel's work-life expectancy, and the loss of society and companionship associated with Mikel's death.

The Mississippi wrongful death statute[2] permits a wrongful death case to be brought if the death resulted from a "wrongful or negligent act or omission" that would have entitled the deceased person to bring a personal injury case had he or she lived. Miss. Code § 11-7-13. The action may be "brought in the name of the personal representative of the deceased person . . . for the benefit of all persons entitled under the law to recover . . ., or by the parent for the death of a child . . ., or all parties interested may join in the suit." *Id.* Here, Jirawan S. Faber brought this wrongful death action as the personal representative and mother of Mikel for the benefit of the wrongful death beneficiaries. (Ecf no. 1 at ¶ 3, Exhibit 1.) The wrongful death beneficiaries are Jirawan Faber and Mikel's two surviving brothers, IQ Sandod and S. Faber.[3]

---

[1] The Servicemembers Civil Relief Act ("SCRA") requires a plaintiff seeking a default judgment to submit an affidavit "stating whether or not the defendant is in military service." 50 U.S.C. App. § 521(b)(1). Plaintiff is submitting an affidavit in this regard concerning the individual Defendants in this case, Taha Albanna, Ahmad Albanna, Jennifer Albanna, and Derrick Davis. *See* Schmeltzer Aff., at P 12(e) and Exhibit 5-k.

[2] Although this action arises out of a Mississippi motor-vehicle collision, it was filed here in Ohio pursuant to 28 U.S.C. 1332(a)(1).

[3] Ecf no. 1; J. Faber Aff at ¶¶ 5, 8-11, 13, 18; J. Faber Aff. at Exhibits 1-a, 1-b, 1-c, 1-f; S. Faber Aff., at ¶ 4; Miss. Code § 11-7-13 ("[I]f the deceased has no husband, nor wife, nor children, the damages shall be distributed equally to the father, mother, brothers and sisters, or such of them as the deceased may have living at his death." There is no "distinction between the kindred of the whole and half blood of equal degree.").

The Mississippi wrongful death statute provides that the claimant "may recover as damages property damages and funeral, medical, or other related expenses incurred by or for the deceased as a result of such wrongful death . . . ., whether an estate has been opened or not." Miss. Code § 11-7-13.  These damages are recoverable by the claimant on behalf of deceased's estate.  *River Region Med. Ctr. v. Patterson*, 975 So. 2d 205, 208 (¶ 10) (Miss. 2007) (*quoting Long v. McKinney*, 897 S. 2d 160, 169 (Miss. 2004)).

The claimant is also entitled to recover "such damages allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." Miss. Code § 11-7-13.  In this regard, the claimant may recover for each of the wrongful death beneficiaries their respective loss of society and companionship, the present net cash value of the deceased's continued existence, and the pain and suffering experienced by the deceased prior to his death.  *See id.* at 208 (¶¶ 10-11); *Clemons v. United States*, S.D. Miss. Nos. 4:10-CV-209-CWR-FKB and 4:10-CV-210, 2012 U.S. Dist. LEXIS 155196, at *19 (Oct. 30, 2012) (*quoting Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 506 (Miss. 2007)).

Except for their individual loss of society and companionship, the beneficiaries share equally in all damages.  *Patterson*, 975 So. 2d at 208 (¶ 11); *Estate of Burns*, 31 So. 3d 1227, 1231-32 (¶¶ 16, 17), 2009 Miss. App. LEXIS 482 (Miss. App. 2009).

**2. The Court should award Plaintiff $1 million for the pain and suffering and mental anguish experienced by Mikel prior to his death.**

The subject crash occurred at approximately 1:19 p.m. on March 13, 2018.  (J. Faber Aff. at Exhibit 1-h (EMS Report (Run Number 15703), p. 1 of 10).)  Over the course of the next three hours, Mikel must have endured unimaginable pain and suffering related to not only his catastrophic physical injuries but also his fear that he was going to die.

A witness to the crash (Jerushah Wilcox) observed Defendant Davis turn left in front of Mikel.  There was nowhere for Mikel to go as he skidded to the right side of the road in an attempt to avoid the collision.  The impact with the Semi ripped away the driver's side of Mikel's vehicle, and he was ejected.  He and it came to a rest in a ravine off the side of the roadway.  Mikel was moaning and breathing, so Mrs. Wilcox and her husband carried Mikel out of the bottom of the ravine to a location more accessible to emergency personnel.  Mrs. Wilcox called 9-1-1, as did other witnesses.  Referring to Mikel's condition, one caller can be heard yelling to the 9-1-1 operator that "he's alive," while at the same time reassuring Mikel and telling him not to "move, honey."  The caller reported to the operator that "his leg is basically amputated" but "he is still alive." Abdominal injuries were observable as well.  One witness approached Mikel and began to pray.  (Schmeltzer Aff. at ¶¶ 12(f), (g); *see also id.* at Exhibits 1 and 2 to Exhibit 4-g.)

Police arrived at about five minutes later and observed Mikel laying on the ground down the embankment.  Good Samaritans were still providing first aid.  (Schmeltzer Aff. at Exhibits 1 and 2 to Exhibit 4-g; J. Faber Aff. at Exhibit 1-h (EMS Report (Run Number 15703), p. 8 of 10).)  Photographs of the scene obtained from the Poplarville Police Dept.

are included as part of Exhibit 2 to Exhibit 4-g of the Affidavit of Michael Schmeltzer, and they depict the sheer devastation caused by the impact.

When emergency medical personnel arrived via ambulance a few minutes after police, Mikal was still breathing on his own but was "responding inappropriately to deep painful stimuli (withdrawing) and has an occasional moan." It was documented that his left lower leg was "mangled . . . with external hemorrhaging . . . ." (J. Faber Aff. at Exhibit 1-h (EMS Report (Run Number 15703), p. 8 of 10).) A medical transport helicopter was dispatched to the scene but was unable to land because traffic was not secured. It orbited the scene and ultimately followed the ambulance from the air when the ambulance departed for Pearl River County Hospital. (J. Faber Aff. at Exhibit 1-j (Transport Medical Record, p. 3 of 13.))

Upon arrival at the hospital (at approximately 1:57 p.m.), Mikel was unresponsive with sluggish pupils. "His teeth were clenched" with "minimal blood in the airway." He was still breathing on his own. Mikel was diagnosed with a large pulmonary contusion to the right chest wall, rib fractures, open left femur fracture, open left tib-fib fracture, and poor respiratory drive. Internal bleeding within the abdomen was suspected. A chest tube was placed on the right, and after stabilizing Mikel's condition for transport, he was "transferred to Forrest General via helicopter EMS at approximately [2:55 p.m.] . . . ." (J. Faber Aff. at Exhibit 1-h (EMS Report (Run Number 15703), p. 8 of 10; *id.* at Exhibit 1-i (ER Note, Account Number 243216); and *id.* at Exhibit 1-j (Transport Medical Record, p. 3 of 13.).)

Ten minutes into the transport, Mikel "became bradycardic at a rate of 40. Atropine was administered, his rate increased for a very brief period and he suddenly became

asystolic." Chest compressions were initiated and epinephrine was administered in flight. The helicopter landed at an airfield to perform advanced cardiovascular life support and an ambulance was requested to transport Mikel back to the hospital. Twenty minutes later, the ambulance arrived and transported Mikel to Pearl River County Hospital. Mikel was pronounced dead at 4:13 p.m. – almost three hours after the crash. (J. Faber Aff. at Exhibit 1-h (EMS Report (Run Number 15739), p. 4 of 10; *id.* at Exhibit 1-i (ER Note, Account Number 243219); and *id.* at Exhibit 1-j (Transport Medical Record, p. 3 of 13.).)

Under the circumstances presented here, an award of $1 million for Mikel's pain and suffering is entirely reasonable and justified.[4]

### 3. The Court should award Plaintiff $2 million for the loss of society and companionship associated with Mikel's death.

As recognized by the U.S. District Court for the Southern District of Mississippi in *Clemons* (applying Mississippi law), it is virtually impossible to "assign a dollar value to anyone's life[,]" and "[a]n award of monetary damages is simply the means by which our system of justice seeks to repair some of the loss and harm inflicted upon the victim and the victim's family." *Clemons*, 2012 U.S. Dist. LEXIS at *20. "'Grief is a readily foreseeable and very real consequence of wrongful death. It can kill a human spirit as effectively as a motor vehicle crash can still a beating heart. Survivors of persons lost to sudden violent death suffer not only the lifetime loss of their loved one, but trauma induced

---

[4] *See Clemons*, 2012 U.S. Dist. LEXIS at *35-*39, *40-43 (awarding $2 million for pain and suffering and mental anguish associated with the decedent's respiratory distress, loss of blood and hemorrhagic shock, "sense of impending doom" over the course of hours, and eventual cardiac arrest; and awarding another $650,000 for pain and suffering of the decedent's 30-week old unborn daughter, who, prior to death, "responded to the lack of oxygen that was killing her [and her mother] by working harder and straining itself [by increasing her heartrate]. As she was dying, her body displayed its instinctive will to live.").

10

by the loss and the manner in which it occurred.'" *Id.* at *20, note 18 (*quoting* Andrew J. McClurg, *Dead sorrow: A Story About Loss and a New Theory if Wrongful Death Damages*, 85 B.U. L. Rev. 1, 9-10 (2005)).

The wrongful death beneficiaries in this case are Mikel's mother, Jirawan S. Faber, and his two surviving brothers, Phathansasin Sandod and S. Faber. *See*, *infra*, pp. 6-7, note 3. Mikel is also survived by his non-adopting step-father, Nathan Faber. While it is very difficult – if not impossible – for the beneficiaries and Mr. Faber to communicate to the Court how Mikel's death has affected their lives, each has prepared a statement for the Court's consideration. (*See* J. Faber Aff. at ¶¶ 15, 23 and Exhibit 1-c; *id.* at ¶ 7; S. Faber Aff. at ¶ 5.)

Suffice it to say, their lives will never be the same, and each of them continue to suffer through the present date as a result of Mikel's wrongful death. They suffered not only the initial trauma of learning that Mikel was killed by a negligent driver, but they were traumatized a second time when they learned through this litigation that he was killed by a man who had no right to be on the roadway to begin with – a man that has been indicted for his fraud and who appears to be on the run. And rather than answer Plaintiff's claims against them, Defendants have twisted the knife yet again by ignoring Plaintiff's Complaint and by offering no defense or explanation as to why Defendant Davis was permitted to operate the semi tractor-trailer with a fraudulent CDL and identity. The beneficiaries cannot help but believe Mikel's death and their ongoing pain and sorrow mean nothing to the Defendants. Under the circumstances, Plaintiff respectfully requests an award of for the beneficiary's loss of society and consortium as follows: (1) $1 million to Jirawan Faber; (2) $500,000.00 to Phathansasin Sandod; and (3) $500,000.00 to S.

11

Faber.  Such an award is not out of line with awards made in other Mississippi wrongful death cases.  *See, e.g., Clemons*, 2012 U.S. Dist. LEXIS at *43-*47.

### 4. Plaintiff's non-economic damages award must be reduced to $1 million to comply with Mississippi's statutory non-economic damages cap.

Mississippi law recognizes no statutory caps on economic damages.  However, Mississippi law places a $500,000.00 damages cap on noneconomic damages in medical malpractice cases, and a $1 million cap in all other civil cases.  Miss. Code § 11-1-60(2)(a) and (2)(b).  The cap applies to the non-economic damages in a wrongful death case regardless of the number of plaintiffs or beneficiaries.  *Estate of Klaus v. Vicksburg Healthcare*, LLC, 972 So. 2d 555, 559 (¶ 11) (Miss. 2007).  *See also Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 258-267 (5th Cir. 2013) (holding the damages cap does not violate Mississippi's Constitution).  Thus, it appears Plaintiff's non-economic damages claim of $3 million should be reduced to $1 million.

### 5. The Court should award Plaintiff economic damages in the amount of $150,673.53.

The funeral and burial expenses incurred as a result of Mikel's death are as follows:

$ 20,306.18
($12,343.38) (funeral goods and services)
($ 5,463.60) (lined vault)
($ 2,499.20) (casket)

True and accurate copies of the associated funeral and burial billing statements are attached as Exhibit 1-g to the Affidavit of Jirawan S. Faber.  Moreover, Mikel's billed medical expenses incurred as a result of the subject motor-vehicle collision are as follows:

$ 43,172.35

12

        ($ 1,423.40) (AAA Ambulance Service)
        ($ 9,641.54) (Pearl River County Hospital)
        ($32,107.41) (Med-Trans)

True and accurate copies of the associated medical and billing records from the referenced treatment providers are attached as Exhibits 1-h, 1-i, and 1-j to the Affidavit of Jirawan S. Faber. Finally, the present net value of Mikel's work-life expectancy is $87,200.00, as demonstrated by the October 7, 2019 report of David Salewsky and the February 25, 2020 report of Alex Constable (*see* Exhibits 4-a and 4-b to the Affidavit of Michael Schmeltzer). Thus, the Court should award Plaintiff economic damages in the amount of $150,673.53.

### 6. The Court should award Plaintiff costs associated with obtaining service of process upon Defendants in the amount of $3,837.60.

As demonstrated by the Affidavit of Michael Schmeltzer, Plaintiff incurred $3,837.60 to obtain service of process upon Defendants. (Schmeltzer Aff. at ¶¶ 8, 11 and Exhibits 4-c, 4-d, 4-e, and 4-f). Plaintiff respectfully requests that the Court impose these costs on Defendants.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and enter default judgment against Defendants PNA Transport, LLC, Taha Albanna, Jennifer Albanna, Ahmad Albanna, and Derrick Davis, jointly and severally, in the amount of $1,154,516.13, plus interest from the date of judgment as provided by law and the costs of this action.

                    Respectfully submitted,

                    ***SLATER & ZURZ LLP***

                    /s/ Michael Schmeltzer
                    RICHARD V. ZURZ, JR. (#0007978)
                    MICHAEL SCHMELTZER (#0080340)
                    One Cascade Plaza, Suite 2210
                    Akron, OH 44308
                    (330) 762-0700
                    (330) 762-3923 – Fax
                    rzurz@slaterzurz.com
                    mschmeltzer@slaterzurz.com
                    *Attorneys for Plaintiff*

## **PROOF OF SERVICE**

      I hereby certify that a copy of the foregoing was served via the Court's electronic filing system, regular mail, and/or electronic mail on this 14th day of February 2020 upon:

PNA TRANSPORT, LLC,
c/o statutory agent Taha Albanna,
2701 Lakeside Ave. E.
Cleveland, OH  44114

PNA TRANSPORT, LLC,
c/o statutory agent Taha Albanna,
6640 Engle Road, Unit E
Middleburg Heights, OH  44130

PNA TRANSPORT, LLC,
c/o its Receiver, Zachary B. Burkins
Rent Due, LLC
1621 Euclid Ave., #408
Cleveland, OH  44115

JENNIFER ALBANNA,
27979 Southern Ave.
North Olmsted, OH  44070

TAHA ALBANNA,
27979 Southern Ave.
North Olmsted, OH  44070

TAHA ALBANNA,
6640 Engle Road, Unit E
Middleburg Heights, OH  44130

AHMAD ALBANNA,
5580 W. 164th Street
Brook Park, OH  44142

AHMAD ALBANNA,
27979 Southern Ave.
North Olmsted, OH  44070

DERRICK DAVIS,
aka Jorge Clinton Bradley,
4124 W. 160th St.
Cleveland, OH  44135

DERRICK DAVIS,
aka Jorge Clinton Bradley,
3742 W. 140th St.
Cleveland, OH  44111

                    /s/ Michael Schmeltzer
                    MICHAEL SCHMELTZER #0080340
                    *Attorney for Plaintiffs*